UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LOUISE MILAN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|     vs. | ) CAUSE NO. 3:13-cv-1-WTL-WGH |
| | ) |
| CITY OF EVANSVILLE, et al., | ) |
| | ) |
|    Defendants. | ) |

### ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This cause comes before the Court on Defendant City of Evansville ("the City") and Defendant Billy Bolin's motion for judgment on the pleadings (Dkt. No. 51). The motion is fully briefed, and the Court, being duly advised, rules as follows.

## I. STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court applies the same standard that is applied when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). The Court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While there is no need for detailed factual allegations, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta*, 499 F.3d at 633 (citation omitted).

## II. BACKGROUND

Plaintiff Louise Milan brings this action pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated her Fourth and Fourteenth Amendments when they wrongly searched and seized her person and home, used unreasonable and excessive force in executing the search and seizure, and falsely arrested and detained her.

According to Milan, on June 21, 2012, the Evansville Police Department ("EPD") and the SWAT Team executed a search warrant for computer devices in Milan's home and raided her residence at the direction of Billy Bolin, Evansville Police Department Chief. The EPD was responding to anonymous online threats and targeted Milan's residence based on her computer's IP address. Once they reached her residence, EPD Officers broke Milan's window and storm door and threw in two flash bang grenades that created property damage. Present in the home at the time were Milan and her eighteen-year-old daughter, Stephanie. Both were ordered to the floor at gun point, handcuffed, and later detained by the Officers for questioning.

The EPD confiscated computers and cell phones from Milan's home. It was later determined that a person had remotely accessed Milan's wireless internet connection in order to send the online threats and, therefore, the EPD had the wrong address. Neither Milan nor her daughter were connected with the anonymous threats.

## III. DISCUSSION

The City moves for judgment on the pleadings with respect to Milan's § 1983 claim. Bolin moves for judgment on the pleadings on all claims against him—Milan's § 1983 claim and her Indiana Constitutional claim. The Court addresses each below.

## A. Milan's § 1983 claim against the City

According to the City, judgment on the pleadings is proper on Milan's § 1983 claim because she has failed to "allege that any specific custom, policy or practice caused her injury." Def. Brief at 3. Both Milan and the Defendants agree that a municipality may be liable under § 1983 "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In her response, Milan argues that she has alleged sufficient facts to establish her claim under any of the above options.

### 1. *The EPD's official policy, widespread custom, or widespread practice*

As stated above, "[t]o state a claim against a municipality under § 1983, a plaintiff must identify a municipal policy or custom that caused the injury." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) (citing *Monell*, 436 U.S. at 694). In her complaint, Milan states that the "Defendants acted pursuant to an established policy, procedure or custom[.]" Complaint ¶ 28. The City argues that this "boilerplate allegation" does not rise to the level required to make her § 1983 claim plausible. It states that "[t]he Complaint consists of legal conclusions and a formulaic recitation of the elements of a *Monell* claim; neither of which move the allegations in the Complaint across the line from possible to plausible." Def. Brief at 3. Ultimately, the Court agrees.

In reviewing Milan's complaint, it is clear that she has not articulated sufficient facts to make it plausible that a policy, custom, or practice of the City led to her injury. Rather, she has alleged that the City, via the EPD, engaged in certain bad acts leading up to the raid on her home,

but she offers no facts that these acts were performed pursuant to a policy, custom, or practice. *See Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) ("Strauss has identified four separate custom[s] and practice[s], one or more of which may have caused his injury, but the only facts alleged relate to his arrest. Nothing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy, leading us to affirm the dismissal of the complaint[.]") (internal citations and quotations omitted).

For instance, in her response, Milan argues that the EPD has a policy, custom, or practice of targeting residences based on unverified IP addresses. *See* Pl.'s Response at 8. However, she offers no facts that would suggest that the EPD has ever obtained a warrant and searched the wrong home in the past due to a failure to verify an IP address. She further argues that in raiding her house with flash bang grenades, the EPD was acting pursuant to a policy, practice, or custom of using excessive force and conducting unreasonable searches and seizures. *Id*. at 8-9. However, again, she offers no facts that suggest this was done pursuant to an official policy, practice, or custom. These facts do not suggest that the EPD has a policy, custom, or practice that led to Milan's alleged constitutional deprivations, but rather simply state how she believes the Defendants have acted wrongly in this case.

The Court agrees with the City that "[t]he Complaint and Response do not reference any wide-spread practice much less one relating in any way to the single incident giving rise to her cause of action." Def. Reply at 2. Milan alleges that the City has a policy, practice, or custom that led to her injuries, but she has not identified any facts to make this allegation plausible. Therefore, in order to prevent judgment on the pleadings from being entered in favor of the City on her § 1983 claim, Milan will have to articulate sufficient facts to allege that Bolin was the

final policymaker for the EPD, and that his actions and decisions led to her alleged constitutional deprivations.

## 2. Bolin as a final policymaker

As previously noted, the third "way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation.'" *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009)).  While Milan does not plead sufficient facts to establish § 1983 liability against the City under an established policy, custom, or practice, the Court believes she has done so with respect to the policymaker option.  Milan argues that the City is liable under *Monell* because as the EPD Chief, Bolin was the official with final policymaking authority, and therefore his decisions that led to Milan's alleged constitutional deprivations can be fairly attributed to the City under § 1983.

Determining who is a final policy maker is a matter of state law. *See Wragg v. Village of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010) ("Whether a particular official has final policymaking authority is a question of state law.").  Milan is correct in her assertion that "a police chief in Indiana is the final policymaker for his municipal police department." *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995).  Milan has alleged that it was Bolin's decisions that led to her constitutional deprivations stating, "Bolin knew about the execution of the search warrant and raid; moreover [he] conducted and facilitated the officers' conduct, approved it, [and] condoned it[.]" Complaint ¶ 21.  Further, her complaint states that it was "a deliberate choice by Bolin to follow a course of action among various alternatives as to the execution of the search warrant and raid on Milan's home." *Id*. ¶ 24.  The Court believes that this is sufficient.  Milan

has stated a plausible claim that as the final policymaker, Bolin made a decision that led to her alleged constitutional violations.

The City presents several arguments in opposition to this claim that the Court finds unavailing. First, it takes issue with the two exhibits[1] attached to Milan's response because "[n]either of these exhibits were attached to the Complaint or referenced in the Complaint." Def. Reply at 3. Milan relies on evidence provided in two attached exhibits to establish that it was Bolin's decisions that led to her alleged constitutional deprivations. However, the Court finds that her complaint alone states sufficient facts to establish that Bolin's decisions led to her alleged constitutional violations, and did not rely on either exhibit in ruling on this motion.

Next, it argues that Bolin's decision led to a single incident involving Milan and that therefore liability for the City is not warranted. While this may indeed be a single incident, this does not warrant dismissal. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."); *see also Valentino*, 575 F.3d at 675 ("It is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once."). Finally, the City again argues that Milan has not established "a policy, practice or custom existing prior to the incident involving Plaintiff." Def. Reply at 3. As discussed above, Milan cannot establish *Monell* liability for the City via a policy, custom, or practice; however, this does not mean her claim fails, as there is a third option available. The final policymaker option is *in addition* to the policy and widespread custom or practice options. The City's arguments, therefore, are unpersuasive.

---

[1] Exhibit A is an Evansville Courier and Press news article regarding the incident, and Exhibit B, is an apology letter written by Chief Bolin to Milan.

The Court finds that Milan has pled sufficient facts to state a plausible claim that as the final policymaker, Bolin made a decision that led to her alleged constitutional violations. Under *Monell*, this is adequate to state a claim for municipal liability. As such, the City's motion for judgment on the pleadings with respect to Milan's § 1983 claim is **DENIED**.

### B.  Milan's § 1983 claim against Billy Bolin

Milan also brings a § 1983 claim against Bolin in his individual capacity. In his motion for judgment on the pleadings, Bolin argues that he "was not involved in Plaintiff's search or detainment," and that therefore, he is not liable under § 1983. Def. Brief at 4. Bolin is correct that in order for § 1983 liability to attach, he has to be found personally responsible for Milan's constitutional deprivations. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) ("It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation."). As the EPD Chief, a supervisory role, Milan has to allege that Bolin "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id.* at 614-15.

It is clear that Bolin was not one of the Officers who actually entered and searched Milan's home or arrested her—Milan asserts in her complaint that it was the Officers of the EPD and SWAT Team that did so. Complaint ¶ 13. However, Bolin is incorrect in assuming that because he was not present at her home on the day in question, "the alleged misdeeds of the Defendant Officers cannot be attributed to him." Def. Brief at 4. If Milan's complaint alleges that Bolin directed the Officers to take the challenged action that day, or even consented to their actions, that is sufficient. *See Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001) ("He [an Illinois State Police Coordinator] will be deemed to have sufficient personal

responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent.").

As discussed above, Milan has alleged sufficient facts to make a plausible claim that Bolin directed the Officers' conduct. She states, "Bolin knew about the execution of the search warrant and raid; moreover [he] conducted and facilitated the officers' conduct, approved it, [and] condoned it[.]" Complaint ¶ 21.[2] This is sufficient to allege that Bolin was "personally involved" within the meaning of § 1983 to go forward. Therefore Bolin's motion for judgment on the pleadings with respect to Milan's § 1983 claim against him in his individual capacity is **DENIED**.

### C. Plaintiff's Indiana Constitutional claim

Milan also brings a claim under the Indiana Constitution, alleging that the Defendants subjected her to "unreasonable search and seizure, wrongful arrest, and unlawful[] detention in violation of Article I, Section 11 of the Indiana Constitution." Complaint ¶ 32. It is settled under Indiana law that there is no implied right of action under the Indiana Constitution. *See Cantrell v. Morris*, 849 N.E.2d 488, 506 (Ind. 2006) ("If state tort law is generally available even if restricted by the [Indiana Tort Claims Act], it is unnecessary to find a state constitutional tort."). As such, the Court dismisses Count II of Milan's Complaint.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for judgment on the pleadings (Dkt. No. 51) is **GRANTED** with respect to Milan's Indiana Constitutional claim, but **DENIED** as to Milan's § 1983 claims.

SO ORDERED: 10/10/2013

*William T. Lawrence*
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[2] Again, the Court did not rely on either exhibit attached to Milan's response in ruling on this claim.

Copies to all counsel of record via electronic communication